[Cite as *State v. Echols*, 2015-Ohio-5138.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102504

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### WILLIAM ECHOLS

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-580261-A

**BEFORE:** Celebrezze, A.J., Boyle, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 10, 2015

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
75 Public Square
Suite 700
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:     Maxwell Martin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., A.J.:

{¶1} Appellant, William Echols, appeals from his convictions for rape and kidnapping arguing the charges stemmed from two incidents that should have been tried separately, statements in medical records from one of the victims were admitted in error, the evidence was insufficient to support convictions, and convictions for rape and kidnapping should have been merged at sentencing as allied offenses. After a thorough review of the record and law, this court affirms in part, reverses in part, and remands.

## I. Factual and Procedural History

{¶2} Appellant was indicted on December 6, 2013, in the Cuyahoga County Common Pleas Court. Charges included two counts of rape and two counts of kidnapping. They stemmed from two separate incidents that occurred on June 7, 1994 and May 8, 1999. At trial the following testimony was adduced.

{¶3} On June 7, 1994, K.C. was walking home late at night from a session of braiding a friend's hair. As she passed a large willow tree or shrub somewhere near East 93rd Street and Woodland Avenue, a person jumped out from the tree and came up behind K.C. The individual held a knife to her throat and threatened her. He moved her from the sidewalk to behind the tree and raped her.

{¶4} The victim of a second attack, M.M., was unavailable to testify because she was murdered in 2007. Her medical records documented her recounting of events that occurred on May 8, 1999. In the course of her medical treatment she relayed that she had been raped. She was walking home when a car pulled up and an unknown individual told her to get into the car or he would hurt her. She complied. She was hit in the head with a brick and raped. She was

taken to the hospital by ambulance where she was treated and a sexual assault examination was performed.

{¶5} Rape kits were collected from both victims and provided to Cleveland police. K.C.'s rape kit remained in the custody of Cleveland police until it was tested in 2012. M.M.'s rape kit was processed by forensic scientists in 1999, but a DNA profile was not developed at the time. In 2012, M.M.'s rape kit was processed and a DNA profile of her attacker was developed. Both DNA profiles resulted in matches to the same profile contained in a federal DNA database. As a result, investigators with the Ohio Bureau of Criminal Investigation interviewed K.C. and investigated the whereabouts of M.M. The investigators also obtained a sample of DNA from appellant, the individual whose DNA profile was returned as a possible match from the federal database. Two different forensic scientists testified that appellant's DNA profile was consistent with that of the attackers of M.M. and K.C., respectively. Both experts testified that appellant could not be excluded as the contributor of the DNA profile developed from the respective rape kits, and the probability of someone else being the contributor was one in 15 sextillion 610 quintillion.

{¶6} The jury returned guilty verdicts for two counts of rape (violations of R.C. 2907.02(A)(2)) and two counts of kidnapping (violations of R.C. 2905.01(A)(4)). The court ordered a presentence investigation report and a psychological report related to appellant's sexual offender classification.

{¶7} At sentencing, the trial court determined that each count of rape did not merge with each count of kidnapping. The court imposed an 11-year sentence for rape and a 10-year sentence for kidnapping related to K.C. The court imposed two 10-year sentences for rape and

kidnapping relating to M.M. The court also classified appellant as a sexual predator under Ohio's former classification scheme in effect at the time of appellant's offenses.

{¶8} From these convictions and sentences, appellant appeals assigning the following errors:

> I. The trial court erred by denying [appellant's] motion for a separate trial, which resulted in prejudice to the defendant and violated his constitutional right to a fair trial.
>
> II. The trial court erred by admitting the medical records of [M.M.] in violation of [appellant's] Sixth Amendmendment right to confrontation and *Crawford*.
>
> III. The evidence adduced at trial was insufficient as a matter of law to prove beyond a reasonable doubt [appellant] was guilty of rape and kidnapping as set forth in counts three and four.
>
> IV. The trial court erred when it failed to find the rape and kidnapping offenses were allied offenses of similar import and merge them for sentencing purposes.

## II. Law and Analysis

### A. Joinder of Multiple Offenses

{¶9} Appellant first claims he was prejudiced by the joinder of charges that were unrelated and should have been tried separately. Prior to trial, he moved the court for separate trials arguing the charges relating to each victim were unrelated and shared no common plan or scheme. The trial court denied the motion, and a single trial encompassing all the charges was had.

{¶10} Joinder of multiple offenses for trial is governed by Crim.R. 8(A). This rule provides,

[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

*See also* R.C. 2941.04. The preservation of the public fisc, conservation of judicial resources, reduction of the opportunity for inconsistent verdicts, and diminution of inconvenience to witnesses favor joining multiple criminal offenses in a single trial under Crim.R. 8(A) so long as the joinder is not unduly prejudicial. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "Two or more offenses can be joined if they are of the same or similar character." *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991), citing *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Crim.R. 14 offers a remedy for improper joinder provided a defendant can demonstrate prejudice. *Id*. Prejudice is shown where "(1) [a defendant's] rights were prejudiced by the failure to sever, (2) *[the defendant] provided the court sufficient information to allow it to weigh the benefits of joinder against his right to a fair trial, and* (3) the trial court abused its discretion by refusing to sever the charges for trial given the information it had been provided." (Emphasis added.) *State v. Echols*, 128 Ohio App.3d 677, 691-692, 716 N.E.2d 728 (1st Dist.1998).

{¶11} Once prejudice is shown,

[t]he prosecutor may counter the claim of prejudice in two ways. The first is the "other acts" test, where the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. If the state can meet the joinder test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B).

(Citations omitted.) *Franklin* at 122. This court reviews the trial court's decision for an abuse of discretion. *State v. Strobel*, 51 Ohio App.3d 31, 554 N.E.2d 916 (3d Dist.1988), citing *Braxton v. Maxwell*, 1 Ohio St.2d 134, 135, 205 N.E.2d 397 (1965).

{¶12} Here, appellant claims the fact that the state alleged that appellant committed crimes of rape prejudiced him. He argues that where the state alleges two separate incidents of rape, the jury would likely misuse the evidence of multiple violent sexual assaults and create a hostile and unfavorable opinion prior to hearing any evidence. In his motion for separate trials, appellant merely asserted:

1. That the Defendant William Echols is charged with two counts of Rape and Kidnapping.

2. That both alleged victims and their incidents are unrelated.

3. That both incidents allegedly took place five years apart.

4. That it would be highly prejudicial to have one trial with two unrelated alleged incidents.

5. That a severence of both victims at trial is necessary to ensure that Mr. Echols would not be prejudiced in the case at bar.

{¶13} The trial court conducted a hearing on the motion to sever at which appellant's counsel stated the following in support:

The reason for this motion in particular is the fact that these 2 crimes, alleged crimes, happened 5 years apart. There's no same modus operandi. The situation tramples on my client's rights. It's going to be unfairly prejudicial for him for a jury to look at 2 situations that are 5 years apart and have them keep a — not draw a conclusion that he might have done something wrong. We think it's only fair. There are 2 separate victims, 2 separate timeframes and he should have 2 separate trials, your honor.

{¶14} The court ruled,

At this point, the court has not heard sufficient factual arguments with respect to prejudice. I haven't heard the specific prejudice other than human nature. Jurors

will be presumed to follow my instructions, which I'll be extremely explicit in my voir dire and my instructions that they are to separately consider each of these counts uninfluenced by their deliberations on the other counts.

The fact pattern I've read in the state's brief, which hasn't been challenged by the defendant, is straightforward and rather simple. It doesn't appear it would be complicated in any way for the jurors to separate these 2 allegations from each other. Jurors are presumed to follow my instructions of law, and so they will. And I'll make sure that my instructions are clear and I will voir dire them extensively with respect to these issues, so it's absolutely clear what they're to do in this matter, not consider one when they deliberate on the other.

And, of course, in every rape case there's going to be, you know, supposedly some prejudicial facts with respect to the defendant. Otherwise, there wouldn't be an indictment. There wouldn't be a case. And the presence of DNA, forensic analysis of that kind of evidence doesn't create more of an unfair prejudice just because there may be some DNA evidence. That's just the nature of the evidence in these cases.

So those are not specific enough reasons for the court to sever the allegations.

{¶15} The trial court's decision to deny the motion based on the arguments made is reasoned and does not constitute an abuse of discretion based on a lack of demonstrated prejudice.

{¶16} Even assuming appellant's bald allegations constituted sufficient evidence of prejudice, the state counters that the crimes are of similar character and the evidence going to each is simple and direct. "The object of the 'simple and distinct' test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. 'The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it.'" *Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728, quoting *Drew v. United States*, 331 F.2d 85 (D.C.Circ.1964). "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33, collecting cases.

{¶17} The rapes of K.C. and M.M. are similar crimes, but entirely distinct in proof. The evidence used to establish the elements of each offense was simple and direct. Each rape kit was analyzed separately, by separate laboratory technicians. The crimes were investigated together, but none of the evidence overlapped between the two incidents.

{¶18} Appellant claims that any evidence requiring expert witness testimony is not simple and direct. However, that argument is unfounded here.

{¶19} DNA evidence, similar to fingerprint evidence, is presented through experts trained in its analysis. In *Lott*, the Ohio Supreme Court held that evidence, including fingerprints, used in the prosecution of Lott for various theft offenses that occurred three years apart was simple and direct. *Lott*, 51 Ohio St.3d at 164, 555 N.E.2d 293. In the present case, the testifying laboratory technicians explained DNA evidence, including how it is collected, maintained, and analyzed. This is expert testimony beyond the normal understanding of a juror. The evidence, although scientific in nature and presented through expert testimony, is simple in its application.

{¶20} Accordingly, the trial court did not abuse its discretion in denying appellant's motion to sever.

### B. Medical Records and the Confrontation Clause

{¶21} Appellant next argues that the court erred in allowing testimony about and the admission of M.M.'s medical records. Specifically, a section in the records contains a description of the events that caused M.M. to seek treatment. Her treating physician read the following statement from M.M.'s records:

> Chief complaint: sexual assault. History of present illness: this is a 29-year-old female brought to emergency department by ambulance because today at out [sic] around 2:10 p.m., May 8, 1999, she was walking from home down the street and a man pulled up in his car and told her to get in the car or he would break her head. The patient did get in the car and he did reach down, and she became afraid of

whether he had a weapon, but he did have a brick in his hand and he did hit her over her head multiple times with a brick. They pulled down the street and forced her to have sex with him, both orally and vaginally. She is not sure whether he stepped on her, or if the brick fell from his hand onto her right foot, because the right foot is bruised. She does not recall when her last tetanus. No loss of consciousness. She is not sure whether he did ejaculate in her vagina or not. Also, he did force her to — he did force her for oral sex and vaginal penetration, but no anal penetration. No nausea, no vomiting. No loss of consciousness. No focal weakness or numbness. No bleeding vaginally and no vaginal discharge. No trouble with her urination or bowel movement. No chest pain or shortness of breath. No abdomen pain. No change in her mental status.

**{¶22}** In the seminal case, the Supreme Court held that the use of testimonial statements at trial violated the Sixth Amendment's Confrontation Clause where the declarant was not subject to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), syllabus. Since that time, the court has been wrestling with the scope of this holding and determining what constitutes a testimonial statement. Most recently, the Court stated,

> A statement qualifies as testimonial if the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L. Ed. 2d 93. In making that "primary purpose" determination, courts must consider "all of the relevant circumstances." Ibid. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.*, at 359, 131 S.Ct. 1143, 179 L.Ed.2d 93. But that does not mean that the Confrontation Clause bars every statement that satisfies the "primary purpose" test. The Court has recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. *See Giles v. California*, 554 U.S. 353, 358-359, 128 S.Ct. 2678, 171 L. Ed.2d 488; *Crawford*, 541 U. S., at 56, n. 6, 62, 124 S.Ct. 1354, 158 L. Ed.2d 177. Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause.

*Ohio v. Clark*, 576 U.S.___, 135 S.Ct. 2173, 2176, 192 L.Ed.2d 306 (2015).

**{¶23}** Appellant points to an Ohio Supreme Court to support his position that the records and testimony relating to M.M.'s statements were improperly admitted. *State v. Arnold*, 126

Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775. There, the court applied the primary purpose test to determine whether statements made by a child victim of sexual assault to a social worker at a child-advocacy center were testimonial. *Id*. at ¶ 28. The primary purpose test seeks to quantify the primary objective of the questioning:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**{¶24}** The *Arnold* court applied this test to the unique situation presented in the case. The child-advocacy center's procedures were unique and included interview questions designed to gather forensic information to investigate and prosecute offenders as well as questions relating to diagnosis and treatment. *Id*. at ¶ 33. The court found that the interviews served dual purposes, and the trial court should have limited admission of statements made primarily for the purpose of prosecution. *Id*. at ¶ 44.

**{¶25}** More recently, in *Clark*, the United States Supreme Court held that statements made to a teacher by a student regarding physical abuse were nontestimonial even though the teacher had a mandatory duty to report the allegations to police. *Id*. at 2182-2183. The court held that the context of the conversation was to address an ongoing emergency. *Id.* at 2181. The court reckoned "[s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id*. at 2182. Here, there is no indication of the type of dual role the social workers presented in *Arnold*. Further, in light of *Clark*, even if there

were, it is doubtful statements made to medical professionals engaged in the treatment of a patient in an emergency room situation would be deemed testimonial. The questioning of M.M. by medical personnel did not carry the same investigatory purpose as that present in *Arnold*.

{¶26} Recently, this court rejected similar arguments raised here and held that statements elicited during questioning by medical personnel for purposes of medical diagnosis and treatment are not barred from trial by the Confrontation Clause. *State v. Bowleg,* 8th Dist. Cuyahoga Nos. 100263 and 100264, 2014-Ohio-1433*, ¶* 14-15, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944. Therefore, the Confrontation Clause does not bar admission of M.M.'s statements.

{¶27} Statements made for the purposes of medical diagnosis and treatment are a clearly defined, long-standing exception to the rules of hearsay. Evid.R. 803(4) provides an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Further, "courts have consistently found that a description of the encounter and identification of the perpetrator are within scope of statements for medical treatment and diagnosis." *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, ¶ 15; *State v. Scott*, 3d Dist. Hardin No. 6-94-17, 1995 Ohio App. LEXIS 2527 (June 7, 1995); *State v. Shephard*, 8th Dist. Cuyahoga No. 62894, 1993 Ohio App. LEXIS 3387 (July 1, 1993).

{¶28} That is not to say that any statement made by a declarant in aid of treatment is admissible under the rule: "The exception is limited to those statements made by the patient

which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted." Staff Note to Evid.R. 803(4).

{¶29} Appellant's Sixth Amendment rights were not violated by the introduction of medical records containing M.M.'s statements and the testimony of her treating physician. Those statements included only a description of the attack reasonably related to medical diagnosis and treatment. Appellant's second assignment of error is overruled.

### C. Sufficiency

{¶30} Appellant also argues that there is insufficient evidence to support his convictions for rape and kidnapping of M.M. The evidence supporting these convictions comes down to M.M.'s description of her rape contained within the medical records and the DNA evidence.

{¶31} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id*. The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶32} Rape, as charged in this case, is defined in R.C. 2907.02 (A)(2) as engaging "in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Kidnapping, as charged here, is defined in R.C. 2905.01(A)(4) as follows: "No person, by force, threat, or deception, * * * shall remove another from the place

where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in [R.C] 2907.01 * * * with the victim against the victim's will[.]"

{¶33} There is sufficient evidence in the record that appellant raped M.M. She was attacked in the middle of the day by a man wielding a brick. Her statement contained within her medical records provide sufficient information to determine that M.M. did not have consensual sex, but was beaten and raped. The DNA evidence collected at the hospital soon after the attack also identified appellant as her attacker within a reasonable degree of certainty.

{¶34} Her statement, in no uncertain terms, indicated she was raped. This evidence, viewed in a light most favorable to the state, is sufficient to sustain appellant's conviction for the rape of M.M.

{¶35} Kidnapping here requires the restraint of one's liberty by another to engage in sexual activity against the restrained individual's will. Inherent in the act of raping a conscious individual is a restraint of liberty. *State v. Anthony*, 8th Dist. Cuyahoga No. 101847, 2015-Ohio-2267, ¶ 57. Therefore, there is also sufficient evidence to support kidnapping. The evidence of kidnapping also goes beyond a restraint incidental to rape. Here, the record indicates appellant forced M.M. into his car under threat of harm and drove her some distance away for the purpose of having sex with her.

### D. Allied Offenses

{¶36} Appellant finally claims that each conviction of rape should merge with each conviction of kidnapping.

{¶37} Pursuant to R.C. 2941.25(A), where a defendant's conduct results in the commission of two or more "allied offenses" of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. This court

reviews the trial court's decision de novo, but must give deference the factual findings made by the trial court. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 25-28.

{¶38} The Ohio Supreme Court has previously addressed whether kidnapping and rape are allied offenses that should merge prior to sentencing. *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). While this case deals with a since rejected standard applied to allied offenses, it is instructive. That court held:

> We adopt the standard which would require an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found. For example, prolonged restraint in a bank vault to facilitate commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger.

*Id.* at 135. This test for an increase in the risk of harm attributed to the actions of the accused was also incorporated into the current analysis used in the allied offense context. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. There, the court set forth the factors to consider in determining whether offenses should merge:

> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance — in other words, *each offense caused separate, identifiable harm*, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

(Emphasis added.) *Id*. at ¶ 25. When analyzing similar import, the court focused on separate and identifiable harm similar to its prior holding in *Logan*. *Id*. at ¶ 26. Here, the evidence presented was that the asportation of K.C. was slight. K.C. was moved from the sidewalk to

behind a tree next to the sidewalk. There was no increased risk of harm associated with this movement apart from that associated with the sexual assault. This movement was done for the purpose of raping K.C. with no separate, identifiable harm. The movement was done in conjunction with the rape, and was not separated by any significant length of time or distance.

{¶39} This must be contrasted with a recent case where this court held that the rape and kidnapping offenses did not merge:

> In this case, the trial court considered that [the defendant] and the other assailant took [the victim] from a Cleveland bar, ostensibly to give her a ride to the gas station to buy cigarettes and then home. Instead, the men took her to a house on Trowbridge Avenue, denied her entrance to use the bathroom, and then took her to a hotel in Lakewood. Once inside the hotel, the men made her drink an unknown substance and then the white male held her down on the bed and raped her. When he was finished assaulting her, he told [the defendant] it was "his turn," and [the defendant] made [the victim] change positions so he could rape her. The men then left [the victim] alone at the hotel. * * *.

> We agree with the trial court that the kidnapping was a "long chain of events" that was not merely incidental to the rape; therefore, on these facts, we agree with the trial court that the offenses of rape and kidnapping do not merge.

*State v. Keeler*, 8th Dist. Cuyahoga No. 101748, 2015-Ohio-1831, ¶ 49-50. *Keeler* is a case on the other end of the spectrum from the present case. Here, the movement was slight, occurred close in time to the rape, and was done solely to facilitate the rape. Therefore, the trial court erred when it failed to merge the rape and kidnapping counts related to K.C.

{¶40} This also contrasts with the movement of M.M. She was abducted from the bus stop. Appellant forced her to get into his vehicle, hit her with a brick once in the car, and he drove her away from the area. The trial court's finding that this movement was significant and encompassed an increased risk of harm is supported. The asportation of M.M. constituted a separate crime for which appellant may be separately punished.

**{¶41}** Therefore, appellant's sentences related to K.C. must be vacated. The court must conduct a new sentencing hearing on the charges related to K.C. where the state shall elect on which charge the court will impose sentence.

### III. Conclusion

**{¶42}** Appellant was not prejudiced by the joinder into a single trial of allegations of rape and kidnapping relating to separate victims that occurred five years apart. The evidence going to each incident was simple and direct, with no chance of confusion of the issues or evidence adduced as to each. Appellant's Sixth Amendment confrontation right was also not abridged by the admission of testimony and medical records that related to statements made for medical diagnosis and treatment. These records, combined with appellant's DNA recovered from the rape examination of one of the victims, constituted sufficient evidence of appellant's guilt. However, the court erred when it did not merge the count of kidnapping with the rape count involving K.C. A new sentencing hearing must be conducted where the state shall elect on which charge related to K.C. the court will impose sentence.

**{¶43}** Judgment is affirmed in part, reversed in part and remanded to the lower court for further proceeding consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
PATRICIA ANN BLACKMON, J., CONCUR