[Cite as *State v. Felts*, 2016-Ohio-2755.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA3491 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| BRETT FELTS, | : | |
| Defendant-Appellant. | : | **RELEASED: 4/27/2016** |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Carrie Wood, Assistant State Public Defender, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Harsha, J.

**{¶1}** Brett Felts, who was convicted of gross sexual imposition, asserts that the trial court violated his federal and state constitutional right to confrontation when it admitted statements the child victim made to a social service worker. However, the evidence indicates the social service worker obtained the child's statements, which included the identity of the perpetrator, the type of abuse alleged, and the identification of the areas where the child had been touched, for medical treatment or diagnostic purposes. Therefore, they were nontestimonial and were admissible without offending the Confrontation Clauses of the United States and Ohio Constitutions.

**{¶2}** Even if we assume that the trial court erred in admitting these statements, the state established that any error was harmless beyond a reasonable doubt because the statements were largely cumulative of other evidence introduced at trial, including: 1) other statements the child made to the social service worker that were admitted

without objection, 2) the statement the child made to her mother, and 3) a scientific analysis that identified the presence of semen and Felts's DNA on panties the child wore when the sexual assault occurred.  We reject Felts's first assignment of error.

{¶3}    Next Felts contends that the trial court violated Ohio evidentiary rules when it permitted the child's mother, Jennifer M., to testify about a hearsay statement that the child made to her.  Felts claims that the statement did not qualify as an excited utterance because there was no finding or evidence that the child made the statement when she was under any nervous excitement. However, a three-year-old child is considered relatively trustworthy due to the child's limited reflective powers.  And the state introduced sufficient evidence that the child was still under the stress of excitement caused by the sexual assault, e.g., the child made the statement to her mother within an hour or two of returning from a weekend visit with Felts.  Likewise, she had been unusually quiet with her mother after her visit, which was very odd and abnormal for her.

{¶4}    The fact that the child made the statement in response to her mother's questions asking what was wrong, what happened, and why her vaginal area was so red, did not make the statement inadmissible.  The mother's questions were neither coercive nor leading.  They facilitated the child's expression of what was already the natural focus of her thoughts and did not destroy the domination of nervous excitement over her reflective faculties.  Consequently, the trial court acted reasonably in admitting the child's statement under the excited-utterance exception to the hearsay rule.  We reject Felts's second assignment of error and affirm the trial court's judgment.

I. FACTS

{¶5}    The Ross County Grand Jury returned an indictment charging Brett Felts with one count of gross sexual imposition in violation of R.C. 2907.05, a third-degree felony.  The indictment alleged that during a three-day period in 2010, Felts had sexual contact with S.M., who was less than 13 years of age and (obviously) not his spouse.

{¶6}    Felts entered a plea of not guilty to the charge and contested the competency of the child victim to testify as a witness.  After conducting an in camera examination of the child, the trial court declared the child incompetent to testify.

{¶7}    When the state indicated its intention to introduce the child's statements to Sexual Assault Nurse Examiner  ("SANE" Nurse) Heidi Norman into evidence, Felts filed a motion in limine to exclude this testimony.  Felts ultimately expanded the motion to contest the child's statements to her mother and to social service worker Laura Butt.

{¶8}    The trial court conducted a hearing where Jennifer M. testified that she is the mother of S.M. and a son, A.M.  She dropped her children off to stay with her sister, Melinda, and her sister's boyfriend, Felts, on the afternoon or evening of Friday, January 15, 2010, and picked them up around 1:00 p.m. on Sunday, January 17, 2010. S.M. was three years old at the time.  According to the mother, although her daughter was normally talkative around her, S.M. was unusually quiet on the trip back home: "she was very quiet, wouldn't talk."  The mother considered her daughter's behavior very odd for her.

{¶9}    When they returned home the mother helped S.M. go to the restroom, and she noticed redness in S.M.'s vaginal area.  The mother testified that when she asked her daughter "what was wrong," "[w]hat happened," and "why it was so red," S.M. told her that "Brett woke her up and touched her and she pointed to her private area."  The

mother then called her daughter's doctors and upon their recommendation, she took S.M. out to the emergency room of the hospital in the same clothes she had been wearing during the weekend visit. S.M. was examined at the hospital and released that day. About a week later, the mother took S.M. to the Child Protection Center.

{¶10} Heidi Norman testified that she is a SANE nurse in the emergency department of the Adena Regional Medical Center. On January 17, 2010, Norman administered a sexual assault kit to S.M. at the hospital. In completing the kit Norman received information about the alleged sexual conduct from S.M.'s mother, rather than from the child.

{¶11} Laura Butt, a social service worker employed by the Ross County Job and Family Services ("RCJFS"), Children's Division, testified that she performs investigations of child abuse, neglect, and dependency. Butt's agency works with law enforcement, the prosecutor's office, and the Child Protection Center in cases involving child abuse.

{¶12} Under the standard protocol, if the child has not been to the emergency room, RCJFS will contact the Child Protection Center and arrange an interview and an examination for the child. If the child has already been to the emergency room, a social worker schedules an interview, a doctor reviews the notes from the hospital, and a follow-up examination with a physician occurs. After interviewing the child, the social service worker completes a child protection interview synopsis and a doctor reviews the worker's notes for purposes of medical diagnosis and treatment. During the interview of the child, the social service worker attempts to garner the following information to be used in the medical diagnosis of the child: the name of the perpetrator and the alleged

abuse, i.e., if the child has been injured or touched, so that the doctor knows what to look for.

{¶13} Butt testified that on January 25, 2010, she interviewed S.M. at the Child Protection Center about a week after her hospital visit. According to Butt the purpose of the interview was to get more diagnostic information for the physician to conduct a medical examination. Butt explained to S.M. that her job was to tell anyone who might have hurt or touched S.M. not to do that anymore. When she asked S.M. if there was anyone she needed to tell that to, S.M. answered "Brett." Butt then asked S.M. what she should tell Brett [Felts], and the child responded that she should tell Felts not to touch her anymore. When Butt asked her where not to touch her, she pointed to her crotch area. S.M. also told Butt that Felts had touched her on her skin rather than simply on her clothes. According to Butt, she asked S.M. whether she was touched on her clothes or on her skin for medical diagnostic purposes because a touching on the skin might require additional medical attention.

{¶14} On cross-examination Butt admitted that she had mistakenly marked on the synopsis form that the abuse involved "[f]ondling over clothes" even though S.M. had told her that Felts had touched her skin in the crotch area. Butt further noted that S.M.'s statements of abuse were "conflicting" and "unclear," that at one point, she stated that she had been touched with a shoe, and that the touching had been by accident rather than on purpose. Butt indicated that the purpose of her interview of S.M. was to gather information for a doctor's follow-up examination, which she acknowledged did not occur until 11 months later. According to Butt, she conducts the interview the same way regardless of when the follow-up examination ultimately occurs. Butt's

recommendation at the end of the synopsis was to interview the alleged perpetrator, i.e., Felts. She did not recommend a medical exam, however.

{¶15} At the conclusion of the hearing the state indicated that it would not introduce the statements made to SANE Nurse Norman because the mother made them instead of the child.

{¶16} The trial court issued a detailed decision overruling Felts's motion in limine. The court determined that the state could introduce evidence of the child's statement to her mother because it constituted an excited utterance excepted from the hearsay rule. The court further determined that the state could introduce evidence of the child's statements to Social Service Worker Butt because they were made for the purpose of diagnosis and treatment and were not testimonial in nature. The trial court later denied Felts's motion for reconsideration of its ruling.

{¶17} After a successful appeal and remand on an issue that is not relevant here,[1] the matter proceeded to a jury trial. The mother testified she dropped off her daughter, S.M., and her son, A.M., with her sister Melinda and her sister's boyfriend, Felts, on a Friday, where they spent the weekend. Contrary to her usual talkative nature around her mother, S.M. was very quiet when her mother picked her up. When they returned home on Sunday, the mother helped her daughter, who was three years old at the time, go to the restroom where she noticed that her daughter was very red in her vaginal area. Over Felts's objection, the mother testified that after she asked her daughter what was wrong and why the area was so red, S.M. told her "that Brett touched her and she pointed to her vaginal area."

---

[1] *See State v. Felts,* 4th Dist. Ross No. 13CA3407, 2014-Ohio-2378.

{¶18}  Jennifer M. then transported her daughter to the hospital emergency room, and she provided law enforcement with S.M.'s underwear that she had worn throughout her weekend visit with her aunt and Felts.  SANE Nurse Norman completed a sexual assault kit for S.M. at the hospital that day.

{¶19}  About a week later Social Service Worker Butt interviewed S.M. at the Child Protection Center.  Butt again testified that the purpose of her forensic interview of children alleged to be sexually or physically abused is diagnostic to determine if there are places on the child's body that doctors need to examine subsequently.

{¶20}  Butt also testified she places the information she obtains in a synopsis form for doctors to review for medical treatment or diagnosis.  This information includes who touched the child, where the child was touched, and whether the touching is on the skin.  The medical purpose of knowing whether the perpetrator had touched the child's skin would be that it could cause a medical condition, e.g., a rash, in the vaginal area that the doctor would need to examine.

{¶21}  The following exchange then occurred, with Felts's counsel objecting only to the initial question about S.M.'s response to whether she had been touched:

MR. MARKS:  During the course of the interview, did [S.M.] have a chance to tell you whether or not she had been touched?

MS. BUTT:  Yes.

MR. MARKS:  What was her, what did she tell you, that she had or hadn't?

MS. BUTT:  She was very shy when she first came in the room and didn't really talk a whole lot and I explained to her that my job is, if someone's done something to them, then I tell them not to do that anymore and I asked her if there was someone I should tell not to do something to her and she said Brett [Felts].

MR. REED:  Your Honor, I'm going to, for the record, objection.

THE COURT:  The objections noted and overruled.

MR. REED:  Thank you.

MR. MARKS:  And she had said Brett?

MS. BUTT:  Correct.

MR. MARKS:  Did she relay to you where she had been touched?

MS. BUTT:  I asked her what I should, where I should tell him, you, what, what should I tell him not to do anymore and she pointed to her crotch area and said touch, should not touch me there.

MR. MARKS:  Okay.  When you say her crotch area what do you mean?

MS. BUTT:  She pointed to, to the vaginal area.

MR. MARKS:  Was she able to tell you whether the contact was on top of her, on top of her clothing or on the skin?

MS. BUTT:  She said it was on the skin.

{¶22}  Although she noted inconsistencies on the synopsis she completed for the doctors' use, Butt testified that "the one thing she was consistent with is saying that Brett touched her and pointed to the crotch and it was on the skin."  Felts did not object to this testimony.

{¶23}  Chillicothe Police Officer Christopher King testified that he interviewed Felts about the accusation and that Felts denied that he had sexually assaulted S.M. Felts advised Officer King that Jennifer M. "likes to start stuff."

{¶24}  Hannah Cox, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that she tested S.M.'s underwear and found, amylase, which is present in saliva and other body fluids, in her underwear. She also

found that semen was present on both the inside and outside of the underwear. Megan Clement, the technical director of forensic identity testing with LabCorp, stated her testing determined that the major DNA profile found on the outside of S.M.'s underwear matched Felts's DNA profile and also included a minor DNA profile consistent with S.M.'s DNA profile. Clement conceded that the Felts's DNA profile was from the non-sperm fraction or component of his DNA. But she also indicated that the probability that another person's profile matched Felts's was "one in greater than the world's population."

{¶25} After the state presented its case Felts submitted some exhibits into evidence and rested without calling any witnesses. The jury returned a verdict finding Felts guilty of gross sexual imposition. After the trial court sentenced Felts accordingly, this appeal ensued.

## II. ASSIGNMENTS OF ERROR

{¶26} Felts assigns the following errors for our review:

I. THE TRIAL COURT ERRED WHEN IT PERMITTED LAURA BUTT TO TESTIFY TO THE STATEMENTS MADE TO HER BY S.M. WHEN THE PRIMARY PURPOSE OF THE FORENSIC INTERVIEW WAS INVESTIGATIVE AND THE INTERVIEW FOLLOWED AN EXAMINATION BY A S.A.N.E. NURSE, WHOSE EXAMINATION WAS RELIED UPON TO CONDUCT ANY SUBSEQUENT PHYSICAL EXAM AND TESTING. FIFTH, SIXTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION; R.C. 2941.25.

II. THE TRIAL COURT ERRED WHEN IT PERMITTED JENNIFER M[][.] TO TESTIFY TO THE STATEMENTS MADE TO HER BY S.M. IN RESPONSE TO QUESTIONING BY MS. MITCHELL HOURS OR DAYS AFTER THE ALLEGED INCIDENT WITHOUT A FINDING OR EVIDENCE TO SUGGEST NERVOUS EXCITEMENT AT THE TIME OF DISCLOSURE. EVID.R. 801(C), EVID.R. 802, EVID.R. 803(2).

## III. STANDARD OF REVIEW

**{¶27}** Felts's assignments of error challenge the trial court's admission of evidence concerning the statements of the child victim. His first assignment of error asserts a violation of his federal and state constitutional right to confrontation, and his second assignment of error asserts a violation of state evidentiary rules.

**{¶28}** In general, " '[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Dean*, __ Ohio St.3d __, 2015-Ohio-4347, __ N.E.3d __, ¶ 87, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. However, for Felts's first assignment of error, " 'questions concerning evidentiary issues that also involve constitutional protections, including confrontation clause issues, should be reviewed de novo.' " *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, ¶ 59, quoting *State v. Jeffers*, 4th Dist. Gallia No. 08CA7, 2009-Ohio-1672, ¶ 17. Therefore, we will review this assignment of error de novo because it raises a question of constitutional law.

**{¶29}** For the evidentiary issue raised in Felts's second assignment of error, we apply the general standard. "Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence." *State v. Leasure*, 2015-Ohio-5327, __ N.E.3d __, ¶ 32 (4th Dist.). " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a "sound reasoning process"; this review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

IV. Right to Confrontation

A. The Applicable Law

**{¶30}** Felts's first assignment of error asserts that the trial court erred by permitting social service worker Butt to testify about statements S.M. made to her.  He argues the admission of the statements violated his constitutional right to confrontation because the primary purpose of Butt's forensic interview was investigative, rather than for diagnostic medical purposes.

**{¶31}** "The Sixth Amendment's Confrontation Clause provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014 -Ohio- 1019, 9 N.E.3d 930, ¶ 34.  The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment.  *State v. Issa*, 93 Ohio St.3d 49, 752 N.E.2d 904, fn. 4 (2001). Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.  *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

**{¶32}** "The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Maxwell* at ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  *Crawford* did not define the word "testimonial" but stated generally that the core class of

statements implicated by the Confrontation Clause includes statements " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting the amicus brief of the National Association of Criminal Defense Lawyers.

{¶33} After *Crawford* the United States Supreme Court held that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2180,192 L.Ed.2d 306 (2015). " 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency' " whereas " '[t]hey are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Clark,* 135 S.Ct. at 2180, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶34} In the context of out-of-court statements by incompetent child declarants, the Supreme Court of Ohio held that "[r]egardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, syllabus. Although the initial focus of *Muttart* was on the proper application of the hearsay rule, which is not the focus in Felts's first assignment of error, the Supreme Court of Ohio also held that

"[s]tatements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." *Id.* at ¶ 63; *see also State v. Taylor*, 8th Dist. Cuyahoga No. 10174, 2015-Ohio-2513, ¶ 41.

{¶35} The Supreme Court of Ohio specifically addressed the issue of whether statements made by children during interviews at child-advocacy centers, or their functional equivalent, are testimonial, and whether statements by child victims of sexual abuse for medical diagnosis and treatment are testimonial. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775. The parties agree here that the Child Protection Center is either a child-advocacy center or its functional equivalent. As the Supreme Court observed, an interview at these types of facilities has two objectives:

> Child-advocacy centers are unique. Multidisciplinary teams cooperate so that the child is interviewed only once and will not have to retell the story multiple times. Most members of the team retain their autonomy. Neither police officers nor medical personnel become agents of the other. However, to ensure that the child victim goes through only one interview, the interviewer must elicit as much information from the child as possible in a single interview and must gather the information needed by each team member. Thus, the interview serves dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim. The interviewer acts as an agent of each member of the multidisciplinary team. *Id* at ¶ 33.

{¶36} After applying the primary-purpose test, the court held that "[s]tatements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination" whereas "[s]tatements made to interviewers at child-advocacy centers that are made for medical diagnosis and

treatment are nontestimonial and are admissible without offending the Confrontation Clause." *Arnold* at paragraphs one and two of the syllabus.

## B. Analysis

**{¶37}** Felts asserts that Butt's introduction of the statements S.M. made to her at the Child Protection Center violated the Confrontation Clause because the primary purpose of the interview was to assist law enforcement, rather than to diagnose and treat S.M. This assertion is meritless for several reasons.

**{¶38}** First, the Supreme Court in *Arnold* emphasized that each individual statement by the child declarant must be analyzed to determine whether the primary purpose was for medical diagnosis and treatment or for a forensic or investigative purpose. Therefore, Felts's claim that all of the statements are inadmissible based on the primary purpose of the entire interview is baseless.

**{¶39}** Second, Felts specifically contests the statements identifying him as the perpetrator of the crime, that he touched her vagina, and that the contact was on her skin. However, Butt testified at both the in limine hearing and at trial that: (1) the purpose of the interview was to obtain diagnostic information so that a physician could conduct a medical examination; and (2) the name of the perpetrator, the nature of the alleged abuse, and whether the abuse involved touching on the child's skin constituted information to be used in the medical diagnosis and treatment of the child. This is the same type of information that the Supreme Court of Ohio found to be admissible because it was for medical diagnosis. *See Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 32, 38 ("information regarding the identity of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to

determine whether to test the child for sexually transmitted infections"); *Taylor*, 8th Dist. Cuyahoga No. 101704, 2015-Ohio-2513, at ¶ 44 ("In *Arnold,* the Supreme Court found that a child's statements regarding the identity of the perpetrator, the type of abuse alleged, the time frame of the abuse, and the identification of the areas where the child had been touched, were all for medical diagnosis"); *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 31 ("Obtaining a thorough history regarding the causation and nature of the injury is an important component of medical diagnosis and treatment"); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 27, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21 (" 'courts have consistently found that a description of the encounter and identification of the perpetrator are within scope of statements for medical treatment and diagnosis' ").

**{¶40}** Third, although Felts contends that S.M.'s statements to Butts were not for medical purposes because the SANE nurse's prior examination provided the pertinent information necessary for a follow-up medical examination, we do not agree. Felts is correct that the facts of the specific situation may rebut conclusory statements of the interviewer. But the Supreme Court in *Arnold* rejected a similar argument at ¶ 39 by stating that "although [the child] was taken to the hospital on the night of the rape, the record establishes only that a rape-kit examination was performed, not that she was examined for medical diagnosis or treated."  Similarly, SANE Nurse Norman testified at trial that she only performed the sexual-assault-kit examination; she did not testify that she examined S.M. for medical diagnosis or treatment.  And although a subsequent doctor could refer to the emergency room records to assist a medical diagnosis and treatment, this would not diminish the utility of the physician's additional use of the

social worker's interview synopsis. Admittedly, it seems very odd that the follow-up medical examination for S.M. evidently did not occur until eleven months after the interview at the Child Protection Center, apparently because of a miscommunication, or Butt's failure to check that box on her interview sheet.  However, this does not alter the character of the information at the time it was gathered or change the fact that the questions Butts asked were relevant to the primary purpose of medical diagnosis and treatment.

{¶41}  Fourth, Felts himself elicited from Butt other statements S.M. made that were not primarily for medical purposes, e.g., whether the touching was on purpose or by accident. In essence, Felts can't have his cake and eat it too, by introducing statements S.M. made that were beneficial to him but by objecting to those that were not.

{¶42}  Moreover, even if we assume that the trial court erred in admitting the testimony of social service worker Butt about what S.M. told her, the state established that such an error could only be harmless beyond a reasonable doubt.  The harmless-error rule is applicable to Confrontation Clause violations.  *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 43.  The state bears the burden of establishing that any error did not affect the defendant's substantial rights. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23.

{¶43}  Recently, the Supreme Court of Ohio applied the following analysis to determine whether an error has affected the substantial rights of the defendant so as to require a new trial. "First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict.  *State v. Harris*, 142

Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *Morris* at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 37, citing *Morris* at ¶ 28. Once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 37, citing *Morris* at ¶ 29, 33. In reviewing the remaining evidence, we are mindful that our rule is not that of supreme fact finder. But rather we must consider the impact the excised testimony had on the jury in determining if there is no reasonable possibility the tainted evidence contributed to the conviction. To accomplish this, we must focus on both the impact the prohibited testimony had on the verdict and the strength of the remaining evidence. *Morris, supra*.

{¶44} Applying these factors here, we find that the error was harmless beyond a reasonable doubt.

{¶45} We recognize that Butt's testimony concerning the child's identification of the perpetrator likely had some negative impact upon the jury. However, when we review the remaining evidence through the eyes of a reasonable jury, we can only conclude there is no reasonable possibility that such a jury would have acquitted him in the absence of the offending testimonial evidence.

{¶46} Initially, we are guided by the fact that Felts's trial counsel only objected at trial to one of the statements of the child that Butts repeated, i.e. that S.M. identified Felts in response to her of whether there was somebody she (Butts) needed to tell not to do something to the child. But there was no objection to Butt's additional testimony in which S.M. identified Felts as the perpetrator of the crime, described his touching of the child's vaginal area, and noted that the touching was on her skin. *See State v. Felts,*

4th Dist. Ross No. 13CA3407, 2014-Ohio-2378, at ¶ 15, quoting *Gables v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 34 (" 'Ohio law is clear * * * that a ruling on a motion in limine may not be appealed and that objections to the introduction of testimony or statements of counsel must be made during the trial to preserve evidentiary rulings for appellate review' "); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus ("A denial of a motion in limine does not preserve error for review.  A proper objection must be raised at trial to preserve error").

**{¶47}**  Second, the mother presented uncontroverted testimony that S.M. told her that Felts touched her and she pointed to her vaginal area.

**{¶48}**  Third, the state introduced additional uncontested evidence that BCI was able to identify sperm on the waist band of S.M.'s underwear and Felts's DNA matched the major DNA found on the S.M's underwear.  The major profile means more of Felts's DNA was on the tested patch of S.M.'s underwear than her own minor profile. That would seem to indicate that an accidental contamination by contacting contaminated clothing or a towel was highly unlikely. Likewise, the probability that another person's STR DNA profile would match Felts's was one in greater than the world's population, i.e. one in 6.8 billion.

**{¶49}**  Because of this overwhelming evidence of Felts's guilt in the absence of the contested testimony, any error was harmless beyond a reasonable doubt, i.e. there is no reasonable possibility that the error contributed to the conviction.

{¶50} We hold that the trial court did not violate Felts's federal and state constitutional right to confrontation by admitting the child's statements through Butt's testimony.  We overrule Felts's first assignment of error.

V. Excited Utterance

A. The Applicable Law

{¶51} Felts's second assignment of error asserts that the trial court abused its discretion in admitting the child's statement to her mother that Felts touched her, pointing to her vaginal area.  Felts claims that this evidence was inadmissible hearsay under the Ohio Rules of Evidence.

{¶52} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C).  "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."  Evid.R. 802.  The pertinent exception here is Evid.R. 803(2), the excited-utterance exception, which provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.

{¶53} Ohio courts apply the following four-part test to determine the admissibility of statements as an excited utterance:

"(a) that there was some occurrence startling enough to produce a
nervous excitement in the declarant, which was sufficient to still his

reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

"(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

"(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

"(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."

(Emphasis sic.) *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus. The rationale of the rule is that circumstances surrounding the excited statement prevent the declarant from using reflective processes to fabricate a statement.

{¶54} There is no dispute that the first, third, and fourth requirements for the application of the excited-utterance exception exist here. A startling event—the touching of S.M.s vaginal area—occurred, S.M.'s statement to her mother identifying Felts as the perpetrator related to the startling event, and the statement was from S.M., who had firsthand knowledge of it. The dispositive issue is thus whether S.M. made the statement while she was under the stress of the excitement caused by the sexual assault, rather than as the result of reflective thought process, i.e. did S.M. make her statements to her mother before the trauma and resulting excitement of the event lost their dominance?

B. Analysis

**{¶55}** Felts claims that there was no finding or anything in the record to indicate that S.M. was still under the stress of nervous excitement when she made the statement to her mother.  However, in the context of young children who are the victims of sexual assault, the requirements for an excited utterance are tempered by the recognition of their limited reflective powers." This is so because their "[i]nability to fully reflect makes it likely that the statements are trustworthy."  *State v. Taylor*, 66 Ohio St.3d 295, 304, 612 N.E.2d 316 (1993).

**{¶56}** We also must recognize that "children are likely to remain in a state of nervous excitement longer than would an adult in cases involving hearsay statements by a child declarant."  *Id.*  Consequently, courts have upheld the application of the excited-utterance exception even where several days or weeks have elapsed since the startling event.  *See State v. Wilson*, 4th Dist. Scioto No. 13CA3542, 2015-Ohio-2016, ¶ 90, and cases cited there, including *In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321, 2007-Ohio-2226, ¶ 53 (concluding that children's statements made 27 days after incident qualified as excited utterances).

**{¶57}** Other relevant factors generally indicating whether the declarant was in a sufficient state of excitement or stress when making the statement include outward indicia of emotional state, like tone of voice, accompanying actions, and general demeanor.  *See, generally, State v. F.R.*, 2015-Ohio-1914, 34 N.E.3d 498, ¶ 28, (10th Dist.) and cases cited there.

**{¶58}** Here, the startling event occurred within two days of S.M.'s contested statement. The mother testified that when she picked up her daughter from the

weekend visit with Felts, S.M.'s demeanor was "very odd" because she was non-communicative, while normally she was extremely talkative with her mother. Manifestly, stress or excitement from a startling event can be exhibited differently by different individuals. For some child declarants, it may be exhibited by relative calm. *See, e.g., In re D.M.*, 2004-Ohio-5858, 822 N.E.2d 433, ¶ 12-18 (8th Dist.) (statement of three-year-old child made while calmly playing with his trucks held admissible as an excited utterance). Based on the limited passage of time and the evidence that S.M. was not acting normally around her mother, the trial court could reasonably determine that she made the statement while she was still under the stress of the excitement caused by the crime. And the mother's questioning seems likely to have acted as a secondary impetus that revived the memory and the excitement of the stressful event. *See State v. Brown*, 112 Ohio App.3d 583, 602, 679 N.E.2d 361 (12th Dist. 1996), where a return to a location of a crime precipitated an excited utterance.

{¶59} Moreover, the fact that the child made the statement about Felts's illicit conduct in response to her mother's questions did not render the statement inadmissible under the excited-utterance exception. "The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466 (1988), paragraph two of the syllabus; *Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, at ¶ 170. The child's statement here was in response to her mother's questions concerning "what was wrong," "what happened," and "why it was

so red" after she noticed redness in S.M.'s vaginal area.  *See, e.g., State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 33 (statement in response to "what happened?" constituted an excited utterance); *State v. Kala*, 11th Dist. Trumbull No. 2002-T-0023, 2003-Ohio-4226 (statement in response to question asking what was wrong constituted an excited utterance).  These questions were neither coercive nor leading; they were simple and straightforward.  The questions served to facilitate the child's expression rather than to cause her to reflect and did not destroy the dominance of her nervous excitement.

{¶60}  Finally, despite Felts's complaints about the lack of specific foundational findings by the trial court, he does not refer us to any requirement in the rule or case law that imposes such a burden on the trial court. Instead, he cites *Wilson*, 2015-Ohio-2016, where we merely mention that the trial court had made a finding that the child remained in an excited state. But we did not mandate such a finding.

{¶61}  Therefore, the trial court did not abuse its discretion in ruling that the child's statement to her mother was admissible as an excited utterance.  We overrule Felts's second assignment of error.

## V. CONCLUSION

{¶62}  The trial court did not violate Felts's constitutional rights to confrontation, or act in an unreasonable, unconscionable, or arbitrary manner under Ohio evidentiary law by admitting the child's statements to the social service worker and to her mother into evidence.  We affirm his conviction.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.


For the Court


BY: _____
       William H. Harsha, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**