[Cite as *State v. Smith*, 2016-Ohio-8043.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103586**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# REGINALD SMITH

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594579-A

**BEFORE:** Laster Mays, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 8, 2016

-i-

**ATTORNEY FOR APPELLANT**

John T. Castele
Rockefeller Building, Suite 1310
614 W. Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Denise J. Salerno
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Reginald Smith ("Smith") appeals his convictions for two counts of rape and one count of kidnapping with a sexual motivation specification. The rape counts merged, and Smith was sentenced to concurrent ten-year terms with sex offender registration under Megan's Law upon release. After a thorough review of the record, we affirm the convictions, vacate the sentences, and remand for hearing and resentencing according to this opinion.

## I. BACKGROUND AND FACTS

{¶2} Smith was indicted on April 1, 2015 for two counts of rape: R.C. 2907.02(A)(2), rape by force; and 2907.02.(A)(1), rape with knowledge of substantial impairment; and kidnapping with a sexual motivation, R.C. 2905.01(A)(4). Each charge is a first-degree felony. The charges arose from an assault that occurred on January 8, 2006, more than nine years earlier, when Smith was 21 years of age. Smith pleaded not guilty to the charges, and a bench trial ensued.

{¶3} Prior to the beginning of the trial, Smith moved the court to dismiss the case, claiming prejudice due to preindictment delay. "Witnesses have disappeared, memories have faded, and people are no longer available that would have been available had this case been prosecuted diligently." The trial court denied the motion, finding that

Smith failed to demonstrate actual prejudice or introduce evidence substantiating his position.

{¶4} The identified victim ("D.P.") testified that her 14th birthday was on January 8, 2006. The afternoon and evening before her birthday, D.P. was out celebrating with: (1) two female friends, Shontel and Roselyn, who were 17 or 18 at the time, (2) another male whose name D.P. could not recall, and (3) Smith, who she knew only as "GG," who was driving the car. Smith was an acquaintance of Jonathan Jones ("Jones"), the father of D.P.'s child. D.P. did not know Smith's age, but she knew that he was older than she. The group was smoking marijuana, drinking and visiting various places.

{¶5} At about 10:00 p.m., the group got into Smith's car again. D.P. was not sure where they were going. The group was still smoking and drinking, and D.P. was intoxicated. They dropped Shontel off and proceeded to a house on Orinoco in East Cleveland where Smith was living. The group smoked more marijuana in the van.

{¶6} D.P. entered the restroom when they arrived at Smith's house. When D.P. exited the restroom, Smith summoned her to the bedroom where she sat on the bed and smoked more marijuana. The two were alone in the room.

{¶7} When D.P. got up to leave, Smith pulled the door knob out of the door and closed it so that D.P. could not open it. Smith told her they were going to have sex and offered her $20. D.P. testified that she told him "no," but Smith pulled down her pants and underwear and engaged in vaginal intercourse with her on the bed. D.P. did not attempt to open the door or to resist. She did not want to

have sex with Smith, but "felt hopeless" because she could not physically stop him, and had no way of leaving the bedroom.

{¶8} When Smith was finished, he "snatched" the $20 from her and replaced the door knob. D.P. was upset and exited the room. Roselyn was there and another girl she had not seen earlier. When D.P. exited the room, she got into the car with Smith. After driving a few streets from his house, Smith told her to get out of the car. D.P. called her sister and told her that "GG" or Smith had raped her. D.P.'s sister picked her up and took her to Huron Road Hospital.

{¶9} Though D.P. initially told the police that she was not sure which house belonged to Smith, she testified on cross-examination that, shortly after the assault, she asked someone to damage Smith's vehicle that he parked in front of his house. The police never followed up with her or asked D.P. to take them to the location to see if she could identify the vehicle or the house. In fact, D.P. did not hear from the authorities from the time of the incident until early 2015. During the interim, D.P. occasionally saw Smith around the neighborhood and felt traumatized by the experience.

{¶10} Shortly before the trial, D.P. talked with Tina Smith, Smith's mother ("Mother"), but never demanded money from her in exchange for failing to testify. Jones also questioned D.P. about the case.

{¶11} Mother testified next. A recording was played of a telephone call between Mother and Smith. Smith supplied Mother with a telephone number during the conversation. The telephone number belonged to D.P. Mother telephoned D.P. once,

but only to see whether D.P. was alright. D.P. told Mother that she could "[p]ay her and she won't come to court." Mother did not know D.P.'s name, but Smith told her that the girl who asked her for money was the person who claimed that Smith raped her. Mother denied that Smith told her to contact D.P. to ask whether D.P. would accept money in exchange for failing to testify.

{¶12} On January 8, 2006, Rhonda Gray ("Gray") was working as a Sexual Assault Nurse Examiner ("SANE nurse") at Huron Road Hospital. Gray also worked with the Cleveland Police Department for 27 years, 18 years as a detective, and was serving her second-year as a homicide detective. Gray has also worked in the medical field for 16 years, and continues to work in that capacity.

{¶13} Gray examined D.P., took swabs, and administered a rape kit. D.P. told Gray that: (1) she was raped by GG (Smith); (2) she kept telling him "no"; (3) he had her get out of his car on Woodworth Avenue; and (4) she called her sister to pick her up. Gray described D.P. as upset and crying. D.P. had no visible injuries.

{¶14} Officer John Bechtel ("Officer Bechtel") of the East Cleveland Police Department testified that D.P. was upset and crying during his interview with D.P. at the hospital. D.P. told him that she was raped by GG who lived in a house on Orinoco in East Cleveland, and provided a vague description of the bedroom where the rape occurred. Officer Bechtel said that, since there were more than 100 two-family houses on Orinoco, and D.P. was unable to provide sufficient identifying information, he returned to the station.

{¶15} Officer Bechtel prepared the January 8, 2006 police report, containing the identifying information of the assailant as "GG who resided on Orinoco." GG was listed as a black male, 25 years of age, with a black shirt and jeans. Officer Bechtel did not follow up on the information or take D.P. to Orinoco for attempted identification. The protocol was to deliver the report to the East Cleveland Detective Bureau who would be responsible for following up.

{¶16} Officer Michael DeLisle ("Officer DeLisle") of the East Cleveland Police Department tagged D.P.'s rape kit in September 2013 to deliver to BCI. Officer Delisle agreed that it would have been a good investigative practice to attempt to identify the address of the assault for the preservation of evidence at the time of the initial 2006 report.

{¶17} Investigator Ferrel Ridgeway ("Investigator Ridgeway") from the Cuyahoga County Prosecutor's Office cold case DNA task force was notified on March 10, 2015, that a CODIS hit for D.P.'s rape kit revealed DNA from two individuals: Jones, the father of D.P.'s child, and Smith. Investigator Ridgeway notified D.P. that Smith's DNA had been identified in D.P.'s 2006 rape kit. This was the first time law enforcement contacted D.P. since the 2006 rape.

{¶18} Investigator Ridgeway and Investigator Timothy Clark ("Investigator Clark") met with D.P. on March 15, 2015. D.P. identified Smith as her rapist from two photographic arrays that also contained a photograph of Jones. D.P. admitted to

Investigator Ridgeway that she was smoking marijuana and drinking the night of the rape, described the events of that night, and stated that she never gave consent.

{¶19} Investigator Ridgeway interviewed Smith who admitted to consensual sex with D.P. after being confronted with the DNA results. Smith also confirmed that he gave D.P. $20 and that his nickname is GG. Smith claimed surprise that D.P. was 14 years of age at the time. Investigator Ridgeway secured a buccal swab from Smith for the Bureau of Criminal Investigation ("BCI").

{¶20} Investigator Ridgeway did not know why there was a delay in the investigation. According to East Cleveland police records, Detective Tiffany Cleveland was assigned to the case, but Investigator Ridgeway did not know what happened after that.

{¶21} BCI Forensic Scientist Emily Feldenkris ("Feldenkris") testified regarding two BCI analysis reports. The first report analyzed the rape kit that was submitted to BCI on September 13, 2013. The second report contained an analysis of the DNA standard obtained from Smith on March 27, 2015.

{¶22} The tests results demonstrated that Smith was a major contributor to the vaginal, anal, and underwear DNA samples. Smith was also a major contributor to the DNA in the pubic hair combings.

{¶23} Defense witness Jennifer Kirk Smith ("Kirk"), a registered nurse, rented the house on Orinoco from her mother. Smith was a close, long-time friend of Kirk's

brother.    Smith rented a bedroom from Kirk for about a month at the time of the assault, while he waited for his new place to become available.

{¶24}   On January 8, 2006, Kirk was working at McDonald's, and arrived home after work at about 1:00 a.m.   She saw Smith and D.P. exiting the bedroom, and said that D.P. was "jovial" and seemed to be fine.   D.P.'s clothes were not disheveled and her hair was in place.

{¶25}   D.P. told Kirk that she knew who she was, and the two exchanged pleasantries.   Kirk did not know that D.P. was underage and thought that she was at least older than 15, "she looked like a young lady."   Kirk was with D.P. and Smith for about 30 minutes and there was no evidence of any problems or discomfort.   Kirk asked them to leave at that time.

{¶26}   Kirk stated there were no locks on the interior doors of the house, and there were times when the door knobs came "out of the doors, and we've had alternate ways of getting out.  We took butter knives.  We took coat hangers to get out of those doors.  So we have came up [sic] with alternate ways."   Kirk was asked if she talked with the Smith family regarding this case.   Kirk stated that she did not speak with any members of the Smith family about the case, and had not heard of money being offered to D.P. to refrain from testifying.

{¶27}   Smith renewed the motion to dismiss for preindictment delay at the close of the state's case and after Smith presented his defense.   The motion was denied by the trial court both times.

**{¶28}** The trial court found Smith guilty of all charges. Smith was sentenced on September 3, 2015. The rape charges merged; however, the trial court determined that the rape and kidnapping were not allied offenses. The trial court stated that the removal of the door knob constituted the kidnapping, and the rape followed. The state elected to proceed under the forcible rape charge, R.C. 2907.02(A)(2).

**{¶29}** During sentencing, the trial court addressed the factors demonstrating compliance with the principles, policy and purpose of R.C. 2929.11(A), and seriousness factors under R.C. 2929.12(B). The court also considered Smith's criminal record, beginning with his juvenile records, and his felony record to the date of sentencing. Smith was sentenced to ten years on each count, to be served concurrently. Smith was also subject to five years postrelease control ("PRC"), accompanied by an explanation by the trial court of the ramifications of failure to comply with the PRC conditions. Smith was also classified as a sexually oriented offender under Megan's Law.

## II. ASSIGNMENTS OF ERROR

**{¶30}** Smith proffers four assignments of error:

1. The trial court erred in not granting the defendant's motion to dismiss the indictment as a result of the prejudice he suffered from the preindictment delay without just cause violating his due process rights and his right to a fair trial.

2. The defendant's convictions were against the manifest weight of the evidence.

3. The trial court erred in finding that rape and kidnapping were not allied offenses of similar import.

4. The sentence imposed upon the defendant was contrary to law.

## III. LAW AND ANALYSIS

### A. Motion for Preindictment Delay

**{¶31}** We begin with Smith's first assigned error claiming prejudice due to preindictment delay. We find this error to be without merit.

**{¶32}** "Decisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983); *State v. Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, ¶ 3.

**{¶33}** Great deference is afforded to the trial court's findings of fact in determining whether to grant or deny a motion to dismiss for preindictment delay. However, an appellate court applies a de novo standard of review to the legal issues. *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 23, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 45.

**{¶34}** Where a delay in initiating an indictment is unjustifiable, and the delay causes actual prejudice to the defendant's right to a fair trial, the Due Process Clause affords the defendant additional protection. *See State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. This is true even though the applicable statute of limitations has not expired. *State v. Jones*, Slip Opinion No. 2016-Ohio-5105.

**{¶35}** Smith relies on this court's en banc decision in *State v. Jones*, 2015-Ohio-2853, 35 N.E.3d 606 (8th Dist.), where we considered the reasons for the preindictment delay prior to determining actual prejudice. However, the Ohio Supreme Court recently reversed that decision in *Jones,* Slip Opinion No. 2016-Ohio-5105. The court determined that actual prejudice is the first step in establishing unjustifiable preindictment delay:

> [W]e have firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

*Jones* at ¶ 13.

**{¶36}** The analysis requires scrutiny of:

> [T]he claim of prejudice vis-à-vis the particular evidence that was lost or unavailable as a result of the delay and, in particular, considered the relevance of the lost evidence and its purported effect on the defense. *See, e.g., State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52.

*Jones* at ¶ 23. Thus, in determining whether Smith has demonstrated actual prejudice, we look at the evidence that was lost or unavailable to Smith as the result of the delay. *Id.*

### 1. Actual Prejudice

**{¶37}** The DNA results confirmed that Smith engaged in intercourse with D.P. D.P.'s statements to the hospital, police, and investigators were consistent. Smith admitted to the act, though he claimed he did not know D.P.'s age, and that the

intercourse was consensual. Smith also mentioned that he should not have taken the $20 back.

{¶38} Smith argues that, if the action had been initiated in 2006, there were "possibly" unidentified witnesses that were never contacted by police or refused to show at trial. "Perhaps" Smith could have been interviewed and evidence collected that corroborated Smith's claim of consensual sex with D.P. But substantial, actual prejudice is not about possibilities. There is nothing in the record to support that exculpatory evidence was lost, or that attempts were made to contact witnesses who could not be located or were unable to remember.

{¶39} There were no witnesses in the bedroom during the act. Smith presented the testimony of Kirk, who testified that D.P. seemed fine and was not upset or disheveled. Kirk was in their presence for 30 minutes and observed no signs of stress or conflict. Kirk confirmed that the door knobs in the older residence could be pulled out, and that another means of opening the door, such as a table knife blade, would be inserted to open the door. Kirk was not at home at the time of the assault and could not say what happened prior to her arrival. Kirk testified that Smith and D.P. were walking out of the bedroom when she arrived. Though D.P. testified that she arrived at the house with Roselyn, Kirk did not testify that anyone else was present.

{¶40} We do not find that "witnesses have disappeared, memories have faded, and people are no longer available that would have been available had this case been prosecuted diligently," as Smith argued before the trial court in

support of his motion. We agree with the trial court's finding that Smith failed to demonstrate actual prejudice or introduce evidence substantiating his position.

{¶41} Smith has failed to satisfy the first prong of the test; therefore, the burden does not shift and our analysis is complete. Smith's first assigned error is without merit.

## B. Manifest Weight

{¶42} The second assigned error asserts that the verdict is against the manifest weight of the evidence. A manifest weight inquiry considers whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit "as a 'thirteenth juror.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)*, quoting *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶43} The weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. During a bench trial, unless it affirmatively appears to the contrary, there is a presumption that the court considered only reliable, relevant and competent evidence. *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968); *State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 27. While reversal from a bench trial requires

only a majority concurrence, it is reserved for the "'"exceptional case in which the evidence weights heavily against the conviction.'"" *Id.* at ¶ 40, quoting *Thompkins* at 387, quoting *Martin, supra*.

**{¶44}** Smith posits that the sole fact in dispute was whether the sex was consensual. To this end, Smith argues that, since he was 21 years old, and D.P. was 14 years old at the time of the offense, Smith should have been convicted of unlawful sexual conduct with a minor under R.C. 2907.04, and not rape.

**{¶45}** Smith was convicted of: (1) R.C. 2907.02(A)(2), vaginal intercourse with D.P. by purposely compelling her to submit by force or threat of force; (2) R.C. 2907.02(A)(1)(c), vaginal intercourse where Smith knew that D.P.'s ability to resist or consent was substantially impaired because of a mental or physical condition; and (3) R.C. 2905.01(A)(4), restraint of D.P.'s liberty for the purpose of engaging in sexual activity against her will, with a sexual motivation specification. Unlawful sex with a minor under R.C. 2907.04 does not require proof of force or threat, but requires proof of sexual conduct where offender knew, or was reckless in knowing, that the victim's age was 13 to 16 years of age.

**{¶46}** While D.P. testified that she was raped and upset when leaving the bedroom, Kirk testified that D.P. was fine and socialized with her for 30 minutes. The trial court, as factfinder, was in the best position to observe the witnesses and weigh the evidence in resolving conflicting testimony. *State v. DeHaas*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶47}** The trial court described the evidence considered in reaching a finding:

Now, this court, after a careful and deliberate review of all the evidence finds that the State of Ohio has presented evidence that rises to the acceptable legal standard of guilty beyond a reasonable doubt as to Count One, rape, as to Count Two, rape, and as to Count Three, kidnapping.

I reviewed the evidence here, and I evaluated the credibility of the victim [D.P.], along with the testimony of Tina Smith, Ferrel Ridgeway, and Jennifer Kirk Smith as fact witnesses in this matter. And reviewing that evidence along with the DNA evidence that was presented through Emily Feldenkris, John Bechtel, Detective Rhonda Gray, and Sergeant Mike DeLisle, I believe that this verdict is consistent with the evidence that I heard and the exhibits that I reviewed, specifically exhibit Nos. 1-8, 10, and 10-13.

(Tr. 284 and 285.)

**{¶48}** We do not find that this is the exceptional case that weighs heavily against conviction, *Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, at ¶ 40, or that the presumption that the court considered only reliable, relevant and competent evidence has been overcome. *White*, 15 Ohio St.2d at 151, 239 N.E.2d 65. The second assignment of error is overruled.

### C.   Allied Offenses

**{¶49}** Smith argues in the third assignment of error that the convictions for rape and kidnapping are allied offenses. We agree.

**{¶50}** R.C. 2941.25, known as the merger statute, codifies the constitutional protections afforded under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 12. "This court reviews the trial court's decision de novo, but must give deference

to the factual findings made by the trial court." *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 37, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 25-28.

{¶51} The *Ruff* court expanded on the analysis set forth in prior case law in determining whether the offenses are allied:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
>
> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? *An affirmative answer to any of the above will permit separate convictions.* The conduct, the animus, and the import must all be considered.

(Emphasis added.) *Ruff* at ¶ 30-31.

{¶52} We recently conducted a *Ruff* inquiry involving a similar fact situation in *Echols, supra*.

{¶53} *Echols* involved two counts of rape and two counts of kidnapping, occurring on two different dates with different victims. *Id.* at ¶ 2. The first incident was on June 7, 1994. Victim K.C. was walking home when: (1) Echols jumped out from a tree, (2) held a knife to the victim's throat, (3) threatened her, (4) moved her from the sidewalk to behind a tree, and (4) raped her. *Id.* at ¶ 3.

**{¶54}** M.M., the second victim, was accosted on May 8, 1999, but was unable to testify by the time of trial as she was murdered in 2007. According to medical records the night of the offense, M.M. was waiting at a bus stop when a car pulled up, and a man threatened to hurt her if she did not get into the car. Upon entering, she was hit in the head with a brick, and raped. *Id.* at ¶ 4.

**{¶55}** The DNA kits were tested, incidents investigated and charges filed on December 6, 2013. A jury found Echols guilty of two counts of rape (R.C. 2907.02(A)(2)), and two counts of kidnapping (R.C. 2905.01(A)(4)). The court determined that the counts did not merge. Echols was sentenced to 11 years for rape and ten years for kidnapping for the 1994 offense, and ten years each for rape and kidnapping on the second.

**{¶56}** It is axiomatic that the Ohio kidnapping statute (R.C. 2905.01), does not require movement of the victim. The act of restraint by "force, threat, or deception" is sufficient. R.C. 2905.01; *Echols,* 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 38, citing *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). "[I]mplicit within every forcible rape is a kidnapping." *Logan* at 130. Pursuant to *Ruff,* our inquiry does not stop there. We look at the three factors cited in considering whether each offense: (1) caused separate identifiable harm (2) was committed separately, and (3) was committed with separate animus or motivation. An affirmative answer to one question results in denial of the merger. *Id.* at ¶ 25.

**{¶57}** We determined, in applying *Ruff* to the offenses involving K.C., that the offenses were, in fact, allied.

> When analyzing similar import, the [*Ruff*] court focused on separate and identifiable harm similar to its prior holding in *Logan*. [*Ruff*] at ¶ 26. Here, the evidence presented was that the asportation of K.C. was slight. K.C. was moved from the sidewalk to behind a tree next to the sidewalk. There was no increased risk of harm associated with this movement apart from that associated with the sexual assault. This movement was done for the purpose of raping K.C. with no separate, identifiable harm. The movement was done in conjunction with the rape, and was not separated by any significant length of time or distance.

*Echols* at ¶ 38.

**{¶58}** We contrasted our findings as to K.C. with Echols's conduct regarding M.M. Echols forced M.M. into his vehicle, hit her in the head with a brick, drove away from the area, and raped her. "The trial court's finding that this movement was significant and encompassed an increased risk of harm is supported. The asportation of M.M. constituted a separate crime for which appellant may be separately punished." *Id.* at ¶ 40. Compare *State v. Keeler*, 8th Dist. Cuyahoga No. 101748, 2015-Ohio-1831, ¶ 50 (the kidnapping was a long chain of events that were not merely incidental to the rape so counts did not merge).

**{¶59}** We therefore look at the facts surrounding Smith's conviction. D.P. testified that Smith called her to enter the bedroom as she exited the restroom. D.P. entered the bedroom voluntarily, sat on the bed, and smoked marijuana with Smith, as she had been doing throughout the day. According to Smith's witness Kirk, there were no locks on the bedroom doors.

**{¶60}** D.P. said that, when she stood up to leave, Smith removed the door knob, turned to D.P., told her that they were going to have sex, and began removing her clothes. D.P. said she told Smith "no," maybe twice. After the intercourse, Smith replaced the door knob, and the two exited the bedroom.

**{¶61}** The facts demonstrate that the removal of the door knob (kidnapping) was for the purpose of perpetrating the sexual act that immediately followed. "The movement was done with the purpose of raping [the victim] with no separate, identifiable harm." *Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, at ¶ 38. In addition, "the movement was done in conjunction with the rape and was not separated by any significant length of time or distance." *Id.* The kidnapping and rape were committed simultaneously and with the same animus.

**{¶62}** Thus, the kidnapping and rapes were allied offenses, and Smith may only be sentenced for one offense. The third assignment of error is sustained.

**D.     Sentence is Contrary to Law**

**{¶63}** The appellate court's standard for review pursuant to R.C. 2953.08(G)(2) for felony sentencing is whether the court:

> "[C]learly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [a reviewing court] may vacate the sentence and remand the matter to the sentencing court for resentencing."

*State v. Ziska*, 8th Dist. Cuyahoga No. 102798, 2016-Ohio-390, ¶ 6, quoting R.C. 2953.08.

**{¶64}** Smith argues here that the trial court erred by sentencing him under H.B. 86 instead of the law in effect in 2006. As a result, Smith argues that his sentence is contrary to law. We disagree.

**{¶65}** The Ohio Supreme Court recently addressed this issue in *State v. Thomas*, Slip Opinion No. 2016-Ohio-5567 ("*Thomas II*"), affirming this court's decision in *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415 ("*Thomas I*"). Thomas committed rape and kidnapping offenses in 1993. He was convicted in 2011 and argued that he should receive the benefit of the shorter sentencing available under H.B. 86. The state argued that H.B. 86 was merely an extension of S.B. 2, so that Thomas did not receive that benefit, and the trial court sentenced accordingly.

**{¶66}** On appeal, we agreed with Thomas that H.B. 86 applied. The Ohio Supreme Court affirmed our findings. We observed in *Thomas I* that:

> [I]n S.B. 2 the General Assembly specifically declared that all defendants who committed crimes on or before July 1, 1996 had to be sentenced under the law in existence at the time of the offense, "notwithstanding division (B) of section 1.58 of the Revised Code." Section 3, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part IV, 11099, amending Section 5 of S.B. 2. *See State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).
>
> However, H.B. 86 does not incorporate this exclusionary language. On the contrary, Sections 3 and 4 of the act expressly provide that certain specified offenses and certain sentencing provisions are subject to H.B. 86 sentencing amendments even though the subject offenses were committed prior to its effective date. As relevant here, Section 4 states, in relevant part:
>
> SECTION 4. The amendments to * * * division (A) of section 2929.14 of the Revised Code that are made in this act apply to a person penalized * * * under th[at] section[ ] on or after the effective date of this section and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable.

*Thomas I* at ¶ 42-43. "In other words, if the provisions of H.B. 86 reduced the potential sentence for an offense, then R.C. 1.58(B) gives offenders not yet sentenced the benefit of the reduced sentence." *Thomas II* at ¶ 14.

{¶67}  Smith's offense was committed January 8, 2006, when S.B. 2 was in effect.  His conviction and sentencing occurred post H.B. 86.  The range for his offense under S.B. 2 was three to ten years.  The range under H.B. 86 is three to 11 years. Smith was sentenced to ten years imprisonment which is within the S.B. 2 range.  Sentencing under H.B. 86 would not reduce the potential sentence for Smith's offense.  In essence, H.B. 86 does not apply.

{¶68} After reviewing the record, however, it is evident that the trial court did, in fact, apply the H.B. 86 sentencing provisions in imposing Smith's sentence.  During the sentencing hearing, the trial court explained that it found Smith "guilty of rape on Count 1, guilty of Count 2, rape, and guilty of kidnapping with [a] sexual motivation [specification].  All are felonies of the first degree *with the potential sentence of 3 to 11 years*[.]" (Emphasis added.)  (Tr. 288.)

{¶69} In imposing Smith's sentence, the trial court should have applied the three to ten year statutory range under S.B. 2, rather than the three to 11 year range under H.B. 86.  Nevertheless, Smith's ten-year prison sentence is within the S.B. 2 statutory range for felonies of the first degree.  Had the trial court imposed an 11-year sentence, however, the sentence would be contrary to law.

**{¶70}** Based on the foregoing analysis, we hereby instruct the trial court to apply the three- to ten-year statutory range under S.B. 2, rather than the three- to 11-year statutory range under H.B. 86, at resentencing.

## IV. CONCLUSION

**{¶71}** The trial court erred in failing to merge the rape and kidnapping counts. A new hearing must be conducted where the state shall select the charge for which the court will impose sentence.

**{¶72}** The convictions are affirmed, the sentences vacated, and the matter is remanded to the trial court for the limited purpose of resentencing pursuant to S.B. 2 consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR