[Cite as *State v. Young*, 2017-Ohio-7162.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 104627

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# GEORGE YOUNG

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573242-A

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 10, 2017

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Denise J. Salerno
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, George Young ("Young"), appeals from his convictions for rape and kidnapping. For the reasons set forth below, we affirm.

{¶2} This appeal arises from an incident that occurred in 1993. On April 21, 1993, K.A., who was 13 years old at the time, stayed home unbeknownst to her mother, who had left for work that morning. K.A. and her mother lived on Central Avenue in Cleveland, Ohio. At approximately 2:30 p.m., K.A. heard someone using a key to enter the home. She hid in her closet, thinking it was her mother. Mother had given her boyfriend, who K.A. knew by the name of "Randy," a key to the house. Randy was later identified as the defendant, George Randy Young.

{¶3} Young came upstairs with a little boy who began playing video games with K.A. in her bedroom. Thereafter, K.A. decided to change her clothing so she could play outside. Young was in her mother's bedroom, when she went in there to get some socks. While K.A. was standing by the dresser, Young grabbed her from behind and pushed her onto the bed. He punched her in the head and forcefully performed oral sex on her. He then penetrated her vagina with his penis. K.A. was able to grab something from the headboard and hit Young with it, which allowed her to jump up and run out of the house. She ran to a neighbor's house and told her neighbor that she had been raped. Her neighbor called the police, and K.A. was taken to the hospital by ambulance. A sexual assault examination was performed at the hospital.

{¶4} K.A. gave a statement to Cleveland Police on May 1, 1993. In the statement, her assailant is identified as "Randy Spivey," but K.A. had no recollection at trial of making the statement or how the name "Spivey" became associated with Randy. Mother also testified that she was not sure how the name "Spivey" came to be associated with Randy. She did not know Young's last name or where he lived. Mother testified that she was surprised to see investigators in 2013 because she thought the case was closed.

{¶5} Investigators contacted K.A. and her mother because the evidence from the rape kit was tested by the Bureau of Criminal Investigation ("BCI") as part of the Attorney General's incentive to have the BCI test its backlog of untested rape kits. In November 2012, an unknown male DNA profile was developed that matched two different rape kits.

{¶6} In response to the November 2012 notification, Cleveland police reopened their investigation and attempted to locate and identify "Randy Spivey." In March 2013, investigators showed K.A. and her mother a "Randy Spivey" photo lineup. Neither K.A., nor her mother were able to identify anyone from the array. During this same time, Young was incarcerated as a result of an unrelated case in the Cuyahoga County Common Pleas Court.

{¶7} On April 9, 2013, which was prior to the expiration of the 20-year statute of limitations, the state indicted John Doe #1, Unknown Male, and identified John Doe #1

only by his DNA profile for the rape and kidnapping of K.A. A warrant for John Doe's arrest was issued the same day.

{¶8} Thereafter, in June 2013, Young's DNA sample was entered into the CODIS system, which revealed a possible match between Young and the DNA profile in K.A.'s rape kit. The BCI informed Cleveland police of the "hit notification" and requested another sample from Young to properly confirm the match. On September 12, 2013, investigators obtained a buccal swab from Young, who was in prison for charges in the unrelated case. On September 17, 2013, the BCI generated a lab report identifying Young as the subject, instead of "Randy Spivey." The BCI matched Young's DNA to that of the unknown male in K.A.'s vaginal swabs at the frequency of occurrence of 1 in 35,750,000,000,000,000,000 unrelated individuals.

{¶9} The state did not move to amend the indictment to change the name from John Doe #1 to George Randy Young until January 31, 2014. A warrant was issued on that same day and Young was arraigned on February 11, 2014. After several motions and pretrials, the matter proceeded to a bench trial on April 25, 2016.

{¶10} Prior to trial, the defense filed several motions and numerous pretrials were conducted. A few weeks before trial, the trial court held a hearing on several of these motions. During the hearing, it was noted that Young's mother's name was written on a police report, but Young admitted that his mother would not have known who "Randy Spivey" was and would not have identified him as such. Young's name did not appear anywhere on the report. After the conclusion of the hearing, the trial court denied

Young's motion to suppress, motion to dismiss for statute of limitations, motion to dismiss and objection to amended indictment, motion to dismiss for retroactive statute of limitations, and motion to dismiss for lack of speedy trial.

{¶11} Then on April 25, 2016, after numerous pretrials, defense motions (several of which were pro se), and several different attorneys, the matter proceeded to a bench trial. Before trial, Young renewed his motion to dismiss for preindictment delay. He argued that he suffered actual prejudice because he was not able to locate a witness who would be able to testify as to his whereabouts on April 21, 1993, at approximately 2:00 p.m. The trial court denied the motion, stating that

> [t]he Court has considered the arguments of counsel, but I do find that under Ohio law, the passage of time itself doesn't create the prejudice and the Court's finding is that no actual prejudice has been demonstrated.

> And even if there was, that the delay was justified by the State in bringing the indictment. So I'm going to deny that motion, and we can proceed to trial.

{¶12} After the conclusion of trial, the court found Young guilty of rape and kidnapping. The court sentenced him to a total of 11 years in prison, to be served consecutive to his other case.

{¶13} Young now appeals, raising the following five errors for our review, which shall be discussed out of order for ease of analysis.

## Assignment of Error One

> The trial court erred when it failed to dismiss [Young's] indictment due to pre-indictment delay.

## Assignment of Error Two

The trial court erred in failing to dismiss the indictment as having been time-barred by the six year statute of limitations in violation of his due process rights.

## Assignment of Error Three

The trial court erred in failing to dismiss the indictment as having been time-barred by the [20-year] statute of limitations.

## Assignment of Error Four

The trial court erred by allowing the state to amend the indictment by adding [Young's] name after the expiration of the statute of limitations had expired, and thereby denying [Young] his right to presentation to the grand jury.

## Assignment of Error Five

The trial court erred in denying [Young's] motion to dismiss for lack of speedy trial.

## Statute of Limitations

{¶14} In the second and third assignments of error, Young argues the trial court should have dismissed the indictment because the statute of limitations expired prior to the date the charges were brought against him.

{¶15} Young first argues that the six-year statute of limitations for rape applies to his case. He further argues that the retroactive application of the 20-year statute of limitations for rape is an unconstitutional absurdity. We disagree.

{¶16} By an amendment effective March 9, 1999, the Ohio General Assembly extended the statute of limitations for rape from 6 years to 20 years. R.C. 2901.13(A)(3)(a). The amendment applies retroactively to offenses committed prior to the effective date of the amendment, provided that the statute of limitations for such

offenses had not yet expired by March 9, 1999. *State v. Pluhar*, 8th Dist. Cuyahoga No. 102012, 2016-Ohio-1465, ¶ 5-6; *State v. Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, ¶ 11.

**{¶17}** In the instant case, the criminal conduct occurred on April 21, 1993. The six-year statute of limitations at the time had not yet expired when the General Assembly's amendment of R.C. 2901.13 became effective in March 1999. As a result, the 20-year statute of limitations applies to Young's case.

**{¶18}** Young next argues that if the 20-year statute of limitations applies, it also expired because the state did not exercise reasonable diligence when executing the John Doe indictment.

**{¶19}** R.C. 2901.13(A)(1) provides that a prosecution shall be barred unless it is commenced within the applicable limitations period. The state bears the burden of establishing that prosecution was commenced within the applicable limitations period. *State v. Gulley*, 8th Dist. Cuyahoga No. 101527, 2015-Ohio-3582, ¶ 14, *discretionary appeal not allowed*, 144 Ohio St.3d 1505, 2016-Ohio-652, 45 N.E.3d 1050, citing *State v. King*, 103 Ohio App.3d 210, 212, 658 N.E.2d 1138 (10th Dist.1995).

**{¶20}** In the instant case, the applicable limitations period is 20 years. If reasonable diligence was used by law enforcement in its attempts to identify the defendant, and all attempts have failed, a John Doe-DNA indictment or warrant can toll the statute of limitations. *Gulley* at ¶ 15, citing *State v. Danley*, 138 Ohio Misc.2d 1, 2006-Ohio-3585, 853 N.E.2d 1224 (C.P.); *State v. Younge*, 2013 UT 71, 321 P.3d 1127;

*Commonwealth v. Dixon*, 458 Mass. 446, 938 N.E.2d 878 (2010); *People v. Robinson*, 47 Cal.4th 1104, 104 Cal.Rptr.3d 727, 224 P.3d 55 (2010); *State v. Burdick*, 395 S.W.3d 120 (Tenn.2010); *People v. Martinez*, 52 A.D.3d 68, 855 N.Y.S.2d 522 (2008); *State v. Davis*, 2005 WI App. 98, 281 Wis.2d 118, 698 N.W.2d 823; *State v. Dabney*, 2003 WI App. 108, 264 Wis.2d 843, 663 N.W.2d 366; *See also* Bieber, *Meeting the Statute or Beating It: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations*, 150 U.Pa.L.Rev. 1079, 1081-1086 (2002). "*Black's Law Dictionary,* (5[th] Ed.1979), at 412, defines 'reasonable diligence' as '[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a [person] of ordinary prudence and activity.'" *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983). "[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Id.*

{¶21} In the instant case, the grand jury indicted John Doe #1 on April 9, 2013, based on a specific DNA profile related to an unknown male that was obtained from BCI and a warrant was issued. Prior to the indictment, the case was stagnant from May 1, 1993 (when K.A. gave her statement to the police) until August 3, 2011 (when K.A.'s rape kit was submitted to BCI for testing). On November 27, 2012, the BCI found a match with the DNA profile in K.A.'s rape kit and another rape kit, but did not have a named suspect for that DNA profile. The Cleveland Police Department reopened the case in December 2012. Investigators attempted to locate and identify "Randy Spivey,"

but neither K.A. nor her mother could identify anyone in the photo array presented to them in March 2013.

**{¶22}** Meanwhile Young was incarcerated on March 28, 2013, as a result of a separate criminal case. On June 13, 2013, Young's DNA was entered into the CODIS system. This prompted a "hit notification" letter to be sent to the Cleveland Police Department that informed them of a possible investigative lead. The June 18, 2013 letter instructed that any possible connection or involvement of Young to the case must be determined through further investigation. On June 21, 2013, investigators met with K.A. and presented a photo lineup containing Young's photo. K.A. was unable to identify him as her assailant. On June 28, 2013, investigators met with K.A.'s mother and presented a photo lineup containing Young's photo. She was also unable to identify him.

**{¶23}** On September 12, 2013, an investigator met with Young. The investigator advised Young of his rights and told him that the DNA found in K.A.'s rape kit appeared to match him. Young signed a waiver and verbally agreed to speak without an attorney present. The investigator advised Young that an indictment naming a DNA profile had already been filed. Young denied knowing the name "Spivey." Young was shown a photograph of K.A. He responded that he had never seen her before in his life. The investigator took a buccal swab from Young during their meeting.

**{¶24}** At this point in time, investigators had three possible suspects: Young, "Randy Spivey," and an unknown male. Young's DNA sample was submitted to BCI to

be compared to the forensic samples in the rape kit. On September 17, 2013, a lab report was generated that changed the subject's name from "Randy Spivey" to George Young. Young could not be excluded as the source of semen. The expected frequency of occurrence of Young's DNA from the vaginal swabs was 1 in 35,750,000,000,000,000,000 unrelated individuals. On January 31, 2014, the state then moved to amend the indictment from John Doe #1 to George R. Young, a.k.a. Randy Spivey, and issued a warrant the same day.

{¶25} While there was a near 20-year delay between the incident and the indictment, the record demonstrates that law enforcement used reasonable diligence in its attempts to identify the assailant based on the information it received. K.A. immediately reported the incident and identified the perpetrator as Randy. Cleveland police's attempts to locate Randy Spivey were unsuccessful. Once police received notice from BCI through the Attorney General's incentive to have the BCI test its backlog of untested rape kits that there was a match on K.A.'s rape kit, investigators again attempted to identify the assailant. The state then brought forth the charges against John Doe #1 on April 9, 2013, which was before the 20-year statute of limitations expired.

{¶26} Accordingly, the second and third assignments of error are overruled.

### Preindictment Delay

{¶27} In the first assignment of error, Young argues he suffered actual prejudice when the state indicted him nearly 20 years after the incident occurred.

{¶28} We note that courts reviewing a decision on a motion to dismiss for

preindictment delay afford deference to the trial court's findings of fact, but engage in a de novo review of the trial court's application of those facts to the law. *Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, at ¶ 10, citing *State v. Henley*, 8th Dist. Cuyahoga No. 86591, 2006-Ohio-2728. The statute of limitations provides the "primary guarantee against bringing overly stale criminal charges." *Henley* at ¶ 5, citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

{¶29} The delay between the commission of an offense and an indictment can constitute a violation of due process of law guaranteed by the federal and state constitutions. *State v. Luck*, 15 Ohio St.3d 150, 153-154, 472 N.E.2d 1097 (1984), citing *Lovasco*. Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden to show substantial and actual prejudice as a result of the delay. *Luck* at 157-158. If the defendant meets the initial burden, then the second part of the test "requires that there be no justifiable reason for the delay in prosecution that caused this prejudice." *Id.* at 158, citing *Lovasco*.

{¶30} "[P]roof of actual prejudice, alone, will not automatically validate a due process claim" as "the prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." *Id.* at 154, citing *Lovasco*. Prejudice is not presumed solely because of a lengthy delay. *Copeland* at ¶ 13. "The determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *United*

*States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed. 2d 468 (1971).

**{¶31}** This court has previously required a defendant to also establish that any missing evidence, lost witnesses, or physical evidence, adversely affected his ability to defend himself. Specifically, this court requires a defendant to demonstrate that missing evidence was nonspeculative and exculpatory. *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 142 (8th Dist.); *State v. Clemons*, 2013-Ohio-5131, 2 N.E.3d 930, ¶ 15 (8th Dist.).

**{¶32}** In determining whether Young has demonstrated actual prejudice, we must look at the evidence that was unavailable as a result of the delay. *State v. Smith*, 8th Dist. Cuyahoga No. 104203, 2016-Ohio-8043, ¶ 13. Young claims that he was unable to find an alibi witness at the time of the rape. He was not able to show that could have been working on the day of the incident because his former employer is now closed and "no one [has] been able to articulate what [he] was doing on April 21, 1993, since so much time had passed." Young also argues the police investigation was insufficient. He claims the police did not follow up with determining the true identity of "Randy Spivey," in light of the name "Loreen Young" handwritten in the margin of an old copy of the police report. Loreen Young is the name of Young's mother.

**{¶33}** Young's claims are insufficient to establish substantial and actual prejudice. "[G]eneralized claims that witnesses' memories had faded over time is insufficient to establish actual prejudice." *Henley*, 8th Dist. Cuyahoga No. 86591, 2006-Ohio-2728, at ¶ 9, citing *State v. Cochenour*, 4th Dist. Ross No. 98CA2440, 1999 Ohio App. LEXIS

1054 (Mar. 8, 1999); *State v. Metz*, 4th Dist. Washington No. 96CA48, 1998 Ohio App. LEXIS 1874 (Apr. 21, 1998); *State v. Glasper*, 2d Dist. Montgomery No. 15740, 1997 Ohio App. LEXIS 583 (Feb. 21, 1997).

{¶34} Moreover, the record reflects that the police attempted to locate Randy Spivey throughout the investigation to no avail. It was not until Young's DNA was entered into the database that the police were able to locate K.A.'s assailant. The record is void of any evidence that the police ceased the investigation only to later resume prosecution on the same evidence that was available to it in 1993. As a result, Young fails to demonstrate that the state delayed the indictment to gain a tactical advantage.

{¶35} The evidence does demonstrate, however, that Young's DNA was in K.A.'s rape kit. The expected frequency of occurrence of Young's DNA from the vaginal swabs was 1 in 35,750,000,000,000,000,000 unrelated individuals. Therefore, based on the foregoing, we find that the trial court did not err when it denied his motion to dismiss for preindictment delay.

{¶36} Accordingly, the first assignment of error is overruled.

Amendment of the Indictment

{¶37} In the fourth assignment of error, Young argues that the John Doe indictment itself and the amendment of the indictment was erroneous. Relying on *Gulley*, he also argues he was a known suspect at the time of the filing of the indictment.

{¶38} John Doe indictments are typically used where the state has the DNA profile of the suspect, but has not yet determined the source of the DNA profile. The Ohio

Supreme Court has stated:

> An indictment * * * is an accusation * * * against a person, and not against a name.  A name is not of the substance of an indictment.  And a person may be * * * indicted, without the mention of any name, and designating him as a person whose name is to the grand jurors unknown.  Or a person may be indicted by a name wholly imaginary and fictitious, as John Doe or Richard Doe[.]

*Lasure v. State*, 19 Ohio St. 43, 50, 1869 Ohio LEXIS 117 (1869).

{¶39} In the instant case, the state did not know who the DNA profile belonged to until June 2013, when Cleveland police received a hit notification letter from the BCI that Young was a possible match.   The assailant was originally identified as "Randy Spivey."  Prior to the hit notification letter, law enforcement was never able to match the DNA profile in K.A.'s rape kit to "Randy Spivey."   Since the state was aware of the DNA profile of the suspect, but had not yet determined who the DNA profile belonged to, its use of the John Doe indictment itself was not erroneous.

{¶40} Young next contends that the state waited to amend the John Doe indictment to gain a tactical advantage.   Crim.R. 7(D) permits a court to amend an indictment so long as there is no change to the name or identity of the crime charged.   Here, the state confirmed that the DNA found in the rape kit belonged to Young and changed the name on the indictment well before trial.   The name or identity of the crimes originally charged never changed.

{¶41} Furthermore, the state was not required to amend the indictment immediately upon finding out Young's DNA was a potential match to K.A.'s rape kit. As the United States Supreme Court stated:

[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."

*Lovasco*, 431 U.S. at 791, 97 S.Ct. 2044, 52 L.Ed.2d 752, quoting *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

**{¶42}** Young also argues that he was a known suspect in 1993, and under *Gulley* the indictment should have been dismissed. The dismissal in *Gulley* is distinguishable from the instant case because Young was not a known suspect at the time of the filing of the indictment. In *Gulley*, the defendant's correct name was given to the police at the time of the crime and the victim identified the defendant in a photo array prior to indictment. *Id.* at ¶ 3, 5. Here, unlike *Gulley*, K.A. and her mother did not know Young's true name in 1993 or any time thereafter, and neither K.A. nor her mother picked him out of a photo array. Therefore, Young was not a known suspect and the dismissal in *Gulley* is inapplicable to the matter before us.

**{¶43}** Accordingly, the fourth assignment of error is overruled.

Speedy Trial

**{¶44}** In the fifth assignment of error, Young argues the trial court erred when it denied his motion to dismiss for lack of speedy trial. Young's speedy trial concerns focus on the time frame of April 9, 2013 to January 1, 2014.

**{¶45}** When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference

to any findings of fact made by the trial court." *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17.

**{¶46}** Ohio's speedy trial statute, R.C. 2945.71(C)(2), states that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within [270] days after the person's arrest." In accordance with the speedy trial provisions, the statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period. *State v. Jenkins*, 8th Dist. Cuyahoga No. 95006, 2011-Ohio-837, ¶ 15, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007 (3d Dist.), *discretionary appeal not allowed*, 2007-Ohio-6803, 878 N.E.2d 33, citing *State v. Stewart*, 12th Dist. Warren No. CA98-03-021, 1998 Ohio App. LEXIS 4384 (Sept. 21, 1998). If the defendant is incarcerated following his arrest, each day spent in jail "on a pending charge" acts as three days toward speedy trial time. R.C. 2945.71(E).

**{¶47}** If the defendant is not arrested for the offense, speedy trial time begins on the day he is served with the indictment. *Id.* at ¶ 16, citing *State v. Pirkel*, 8th Dist. Cuyahoga No. 93305, 2010-Ohio-1858. _If a capias must be issued for the accused, speedy trial time is tolled for this time period. *Id.*, citing *State v. Ennist*, 8th Dist Cuyahoga No. 90076, 2008-Ohio-5100. *See also Marion*, 404 U.S. 307 at 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (recognizing that the speedy trial guarantee under the federal constitution has no applicability to preindictment delays); *see also Ennist* at ¶ 19, citing *State v. Davis*, 7th Dist. Mahoning No. 05MA235, 2007-Ohio-7216; *State v. Weiser*, 10th

Dist. Franklin No. 03AP-95, 2003-Ohio-7034.

**{¶48}** Here, the period of time between the John Doe indictment and the state's motion to amend was almost nine months. During that time, Young was incarcerated on March 28, 2013, for his convictions in a separate case. Then, four months passed from the time the state was able to identify Young as the source of the DNA to when the state amended the indictment to include Young's name as the offender. On January 31, 2014, a warrant was issued, which was the same day the indictment was amended to include Young's name. Young was in custody for this case on February 7, 2014, and was arraigned on February 11, 2014. Since his speedy trial time began to run in February 2014, and not April 2013, we do not find that Young's rights to a speedy trial were violated during the time frame he challenges.

**{¶49}** Therefore, the fifth assignment of error is overruled.

**{¶50}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR